# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 05, 2014

## STATE OF TENNESSEE v. ALVIN UPCHURCH

**Appeal from the Criminal Court for Shelby County**
**No. 1203324     Lee V. Coffee, Judge**

_____

**No. W2013-02448-CCA-R3-CD  - Filed January 8, 2015**

_____

Defendant, Alvin Upchurch, was indicted by the Shelby County Grand Jury for one count of aggravated robbery.  Following a jury trial, Defendant was convicted as charged.  Defendant was sentenced by the trial court to serve 12 years in confinement.  Defendant's sole issue on appeal is whether the sentence imposed was excessive.  Having reviewed the record before us, we conclude that Defendant's sentence was proper.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, (on appeal); Stephen C. Bush, District Public Defender; Kathy Kent and Jane Sturdivant, Assistant Public Defenders, Memphis, Tennessee, (at trial), for the appellant, Alvin Upchurch.

Herbert H. Slatery, III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Trial*

On December 2, 2011, at approximately 5:00 p.m., Daniel Taylor, a student at LeMoyne-Owen College, met a friend in front of the school gym and purchased a "dime bag" of marijuana from him.  Taylor began walking toward school when a man across the street

yelled "Big Dude" to him. The man, whom Taylor later identified as Gerald Crawford, told Taylor to "'Come here.'" Taylor met him in the street, and Crawford asked him, "'Do you know where some weed at?'" Taylor responded, "[n]o," and turned to walk away. Taylor testified, "that's when [Defendant] came out of nowhere and started questioning me like, 'Dude, I think you look like a dude who robbed me named Kenda." Taylor responded, "no," and began to walk away. Defendant again asserted that Taylor looked like someone named Kenda who he alleged robbed him, and Taylor repeated that he was not. Defendant "started getting mad and asking the same question again[,]" and Taylor showed him his identification. Crawford said, "That ain't the dude." Taylor turned around and when he looked back, Defendant pulled out a gun, cocked it, pointed it at Taylor's head and said, "Give me everything you got." Taylor described the gun as a silver .45 caliber pistol.

Taylor gave Defendant his money and the marijuana he had just purchased. Defendant took it and said, "Give me everything." Taylor told Defendant that he did not have anything else, and Defendant pushed Taylor to the ground. Taylor emptied his pockets. Defendant and Crawford took Taylor's phone, wallet, and $85 cash and walked away. Taylor subsequently identified Crawford and Defendant in photographic lineups.

Gerald Crawford, Defendant's co-defendant, testified that he saw Taylor buying marijuana in the street where the incident occurred. He and Defendant then followed Taylor. Crawford testified that it was Defendant's idea to rob Taylor. Crawford testified that he did not know Defendant had a gun. Crawford testified that he did not pick up any of the items Taylor emptied from his pockets but that Defendant held the gun in one hand and picked up the stolen items with his other hand. After the robbery, Crawford and Defendant met at the home of "Marco," and Defendant gave the marijuana he took from Taylor to Marco and some of the money he took from Taylor to Crawford.

### *Sentencing hearing*

At the sentencing hearing, the State relied on the proof presented at trial as well as the presentence report. The only testimony offered by Defendant at the sentencing hearing was regarding his decision to reject a plea offer by the State with an agreed upon sentence.

At the conclusion of the sentencing hearing, the trial court found that Defendant had a previous history of criminal behavior consisting of juvenile adjudications for carrying a weapon on a school campus, disorderly conduct, unlawful possession of a weapon, assault, and gambling. The trial court found troubling that two of Defendant's prior juvenile offenses involved a gun. The trial court stated that it gave "great weight" to that finding. Although the trial court did not assign any weight to it, the court noted that Defendant also had a pending murder charge at the time of sentencing in this case. The court also found that

Defendant was a leader in the commission of an offense involving two or more criminal actors based on the testimony of his co-defendant Crawford, and the court also gave great weight to that factor. The court found that Defendant was adjudicated to have committed acts as a juvenile that would constitute a felony if he had been an adult, and the trial court also gave great weight to that finding. The trial court declined to apply any mitigating factors and noted that Defendant "started at a young age of committing crimes [and] has continued to commit escalating crimes[.]" The trial court imposed the following sentence:

> Having found that [Defendant] is a standard range one offender and having found the presence of those factors which are, in fact, enhancing under Tennessee Code Annotated 40-35-114 and not having found any mitigating factors, this Court will set [Defendant]'s punishment on this case at twelve years['] confinement in the Tennessee Department of Corrections. He is a standard range one offender[.] This is twelve years as a violent offender. This is an eighty-five percent (85%) release eligibility for which there is no possibility of parole on this case. He can earn a fifteen percent (15%) sentence reduction. This Court will not impose a fine on this case as [Defendant] was deemed to be indigent by this Court, and I do not find that the imposition of a fine in this case would be in the best interest of the administration of justice or anyone else to impose a fine, so the Court will set the punishment at twelve years as a violent offender and eighty-five percent (85%) release eligibility, no fines, and the Court does render [Defendant] infamous and that [Defendant] has lost all his rights of citizenship.

*Analysis*

On appeal, Defendant contends the trial court's imposition of the maximum sentence was excessive because his previous criminal record contained only juvenile offenses, which the trial court afforded improper weight, and that his sentence of confinement was excessive. The State responds that the record supports the sentence imposed by the trial court.

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, that error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. T.C.A. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(4).

Defendant asserts that the trial court failed to properly evaluate all of the statutory considerations pursuant to T.C.A. § 40-35-210. Specifically, Defendant states that "[n]owhere in the sentencing hearing did the trial court mention any statistical information provided by the administrative office of the courts as to sentencing practices in similar offenses in Tennessee." The record reflects that the trial court properly considered the statutory sentencing considerations. We note that prior to making its sentencing determination, the trial court thoroughly stated its findings on the record in this case and specifically stated that the "the Court has considered all the sentencing factors as reflected in Tennessee Code Annotated 40-35-210." Among the other considerations provided for in T.C.A. § 40-35-210, the trial court "considered the statistical data provided by the Supreme Court Administrative Office of Court regarding sentencing practices for similar offenses committed in the state of Tennessee." Therefore, the trial court's sentencing decision is entitled to an abuse of discretion review with a presumption of reasonableness.

Defendant asserts that the trial court gave improper weight to enhancement factor (1) because Defendant's juvenile adjudications were "neither frequent [n]or recent." We conclude that the record supports the trial court's application of the enhancement factors found in this case. Defendant's presentence report showed that Defendant committed multiple offenses between the ages of 12 and 16, Defendant's age when he committed the offense in this case. Furthermore, it was within the trial court's discretion to sentence the Defendant anywhere within the eight to twelve-year range. *See* T.C.A. §§ 39-13-402(b) and 40-35-112(a)(2). Therefore, we conclude that because the trial court considered the

principles of sentencing and gave detailed reasons supporting its imposition of the maximum sentence, including why it was applying certain enhancement factors, its within-range sentence was proper. We cannot conclude that the trial court abused its discretion in determining the length of Defendant's sentence.

Defendant also asserts that a sentence of confinement was inappropriate in this case because there was no evidence of a special, particularized need for deterrence under T.C.A. § 40-35-103(1)(B). The State notes that Defendant's confinement in this case was not predicated on T.C.A. § 40-35-103(1)(B). The State may be correct in that assertion; however, the State has failed to recognize in this case that Defendant is not eligible for probation under T.C.A. § 40-35-303(a) (2010 Repl.) because he was convicted of aggravated robbery. Defendant is not entitled to relief. The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE